59 CCPA

**DOLLIFF & COMPANY, Inc., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5456.**

United States Court of Customs
and Patent Appeals.

April 27, 1972.

---

8. Williamson discloses that adhesive may either be applied to both sides of the sheets or to one side only.

Walter E. Doherty, Jr., Boston, Mass., attorney of record, for appellant.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Martin L. Rothstein, New York City, for the United States.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

ALMOND, Judge.

This is an appeal by appellant-importer from the decision and judgment of the United States Customs Court, First Division,[1] which held that the imported merchandise was properly classified and overruled appellant's protest. The merchandise, consisting of women's leather golf shoes, was classified under item 700.40 of the Tariff Schedules of the United States (TSUS) as footwear, of leather, for other persons than men, youths, and boys, and was assessed with duty at the rate of 20 per centum ad valorem. Appellant claims the shoes to be properly classifiable under item 700.-30 TSUS, as footwear in chief value of leather "with molded soles laced to uppers," dutiable at 10 per centum ad valorem.

The pertinent provisions of the tariff schedules are:

*Classified under*:
Tariff Schedules of the United States:
Schedule 7, Part 1, Subpart A:

Footwear, of leather (except footwear with uppers of fibers):

       \*    \*    \*    \*    \*

Other:

       \*    \*    \*    \*    \*

Item 700.40 For other persons ...... 20% ad val.

*Claimed under*:
Tariff Schedules of the United States:
Schedule 7, Part 1, Subpart A:

Footwear of leather (except footwear with uppers of fibers):

       \*    \*    \*    \*    \*

Item 700.30 Footwear with molded soles laced to uppers .............. 10% ad val.

The single issue in this case is whether the Customs Court erred in holding that appellant had not proven that the soles of the imported shoes are "laced" to the uppers as required in item 700.30, TSUS. The process of attaching the soles to the uppers, which appellant claims is a lacing process, includes as a preliminary step the formation of the sole. This is done by cutting the sole to shape, skiving the edges, and punching holes around the periphery of the sole. It is then placed in a heated aluminum male and female mold which shapes it exactly to the shoe body, after which the sole is attached to the bottom of the shoe by means of a temporary cement. An awl is used to align the pre-punched holes in the sole with those punched in the upper. This is followed by drawing waxed threads, attached to pig bristles, through the prepunched holes from opposite directions to form a cross-stitch. Appellant's principal witness testified that the reason for applying the bristles to the end of the thread "is to provide a semi-rigid leader which can find its way through the holes in the two pieces of material, one being the sole and the other being the upper."

Appellant contends that this process is a lacing process within the ordinary meaning of the term "laced" because the "laces" are inserted by themselves, unattached to any needle or other tool,

1. 65 Cust.Ct. 681, C.D. 4158, 319 F.Supp. 1392 (1970).

through pre-punched holes and then drawn together to tighten the opposite edges of the article being laced so as to hold the edges of the sole and upper in place. It is appellant's position that the process used is similar to the common practice of lacing up a pair of shoes by inserting the ends of the shoelace, with a plastic or metal tip, through pre-punched holes and then drawing them together.

The Customs Court held that appellant had not sustained its dual burden in proving that the assigned classification is erroneous and that the shoes in question should have been classified as claimed. While that court recognized that appellee need not affirmatively establish that appellant's process is something other than lacing, it agreed with appellee that the process is really one of handsewing and cannot be considered lacing.

We affirm. Without specifically holding that appellant's attachment process is handsewing, we think it more nearly resembles handsewing than lacing. Appellant contends that it cannot be considered sewing since no needle, sewing awl, or other instrument is used to force the thread through the material. As we see it, however, the stiff bristle leader attached to the thread is such an instrument; at least it is more nearly analogous to a needle than it is to the plastic or metal tip of a shoelace. It is the bristle leader which forces its way through the aligned, pre-punched holes in the leather. The thread, being attached to the end of the bristle, is then drawn after it in the same way that thread is pulled through material by a needle.

As such, we see no reversible error in the Customs Court's holding that appellant's attachment process is not one of lacing and that the soles, therefore, cannot be considered "laced" to the uppers within the common meaning of that term. There is also evidence of record indi-

2. Prepared by the National Shoe Manufacturers Association, Inc., in April 1963. It is stated in the foreword that the

cating that goods similar to appellant's are for another reason considered by the trade to be handsewn rather than laced. A pamphlet, entered of record by appellee and entitled "Footwear Construction Definitions,"[2] states that in a lacing process the lacing material "must be reeved round and round through the holes." It goes on to state that "In other words, the handsewn type of stitching where the threads are passed through from both sides and crossing in the holes, is not regarded as lacing, but strictly as 'handsewn.'" The cross-stitches of appellant's process clearly would, in accordance with those definitions, not be considered lacing.

Appellant having failed to satisfactorily establish that the soles of the imported women's golf shoes are "laced" to the uppers as required by item 700.30, the judgment of the Customs Court sustaining the classification of the involved goods under item 700.40 is affirmed.

Affirmed.

WORLEY, C. J., took no part in the decision of this case.

59 CCPA

pamphlet is a "dictionary of simple footwear construction definitions" for "nontechnical people."